UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

**PHYLLIS ANN FRISBY**              \*        **CIVIL ACTION NO. 13-3119**

**VERSUS**                          \*        **JUDGE HAIK**

**COMMISSIONER OF SOCIAL**          \*        **MAGISTRATE JUDGE HILL**
**SECURITY**

### REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993.  Phyllis Ann Frisby, born January 7, 1955, filed an application for a period of disability and disability insurance benefits on April 22, 2011, alleging disability as of November 4, 2010, due to diabetes mellitus, high blood pressure, arthritis, neuropathy, and ruptured Achilles tendons in both legs.

### FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the Commissioner's decision comports with all relevant legal standards.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Claimant's Medical Records**.  Claimant was treated by Dr. James Noriega in 2009 for a partial Achilles tendon rupture, for which he prescribed physical therapy.  (Tr. 158).  After she failed to appear for her remaining three ordered and authorized visits, the physical therapist discharged her on January 4, 2010.  (Tr. 163).[1]

On May 17, 2010, Dr. Noriega performed a total nail avulsion of the right great toe.  (Tr. 159).  Claimant canceled her last appointment.  (Tr. 156).

Dr. Kenneth A. Ritter, Jr. performed a consultative examination on July 18, 2011.  (Tr. 171).  At that time, claimant complained of diabetes, hypertension, Achilles tendon tears causing bilateral ankle pain, stiffness and weakness, and neuropathy.  She used a cane to walk, stating that her balance was off because of ankle problems.  (Tr. 172).  Dr. Ritter's impression was adult onset diabetes under apparently very good control, hypertension under good control, and complaints of ankle stiffness and weakness with no objective findings.  (Tr. 172-73).

---

[1] It is well established that failure to follow prescribed medical treatment precludes an award of benefits.  20 C.F.R. § 416.930(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990).

In the Medical Assessment of Ability to do Work-Related Activities (Physical), Dr. Ritter indicated that claimant could lift/carry up to 20 pounds occasionally and 15 pounds frequently; stand/walk for four to seven hours in an eight-hour day, and one to two hours without interruption; had no limitations as to sitting, and could rarely climb, frequently stoop and balance, and occasionally kneel, crouch and crawl.  (Tr. 174).

A nerve conduction study dated March 5, 2012, showed severe peripheral polyneuropathy consistent with the history of diabetes mellitus.  (Tr. 180-88).

On June 21, 2012, Dr. James M. Lipstate found that claimant was developing osteoarthritis in her hands and knees, and likely had adhesive capsulitis in the right shoulder.  (Tr. 190).  He noted that she had peripheral neuropathy, which was an accentuating factor for degenerative arthritis.  He prescribed Naproxen, gave her samples for Cymbalta for controlling neuropathy pain and pain due to osteoarthritis, and recommended shoulder exercises.

**(2) Claimant's Administrative Hearing Testimony**.  At the hearing on June 13, 2012, the ALJ stated that claimant appeared *pro se* and had "agreed to do so."  (Tr. 18).  Claimant testified that she had returned to work full-time in September, 2011.  (Tr. 19).  She stated that she was "not being very productive

right now." She reported that she had worked for the company for eight years, and she took the position although she was "hurting" and out of work.

Claimant testified that had been making about $2,000 a month since last September. (Tr. 20). She stated that she was living in a corporate apartment on the property. She also reported that she had a home in Scott, La., in which her son resided.

Claimant stated that she had stopped working in November, 2010, because the company for which she was working closed down her apartment community. (Tr. 21). She reported that she drew unemployment until August of 2011. (Tr. 21). She testified that the company called her back to work, and allowed her to live in a corporate unit.

**(3) The ALJ's Findings**. Claimant argues that: (1) her waiver of her right to counsel was invalid; (2) her written waiver of the right to inspect post-hearing evidence was invalid, (3) the ALJ applied an improper legal standard and relied upon evidence not adduced at the hearing to conclude that she performed substantial gainful work activity.

As to the first two arguments, it is well established that the ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts. *Brock v. Chater*, 84 F.3d 726, 728 (5th

Cir. 1996). When a claimant is not represented by counsel, the ALJ owes a heightened duty to "scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts." *Id*. (*citing Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984)).

However, to merit reversal of the ALJ's decision, a claimant who does not validly waive his right to counsel must prove that she was thereby prejudiced. *Id*.; *Gullett v. Chater*, 973 F.Supp. 614, 621 (E.D. Texas 1997). Prejudice can be established by showing that additional evidence would have been produced if the ALJ had fully developed the record, and that the additional evidence might have led to a different decision. *Newton v. Apfel*, 209 F.3d 448, 458 (5th Cir. 2000).

The Commissioner argues that claimant validly waived her right to counsel because she had received several written notices advising her of the right to an attorney. [rec. doc. 12, pp. 40, 43-46; 48; 50; 53-54]. Additionally, she signed a written Waiver of Representation prior to the hearing, indicating that she understood her right to representation at the hearing, voluntarily waived that right, and requested to proceed without a representative. (Tr. 61). Further, she acknowledged in the Waiver that she had received a list of attorney organizations prior to receiving the Notice of Hearings. (Tr. 61).

In support of its argument, the Commissioner cites *Castillo v. Barnhart*, 325 F.3d 550, 552-53 (5th Cir. 2003), in which the Fifth Circuit concluded that claimant's receipt of numerous written notices of her right to counsel, along with the ALJ's reminder at the hearing of her right to counsel, sufficiently informed her of her right to an attorney such as to constitute a valid waiver. Here, as in *Castillo*, the record reflects that claimant received several notices of her right to representation, signed a waiver of representation prior to the hearing, and was reminded of her right to any attorney at the hearing. Thus, I find that the waiver was valid.

Assuming that the waiver was invalid, claimant must still show that she was prejudiced thereby. *Brock*, 84 F.3d at 728; *Gullett*, 973 F.Supp. at 621. To establish prejudice, claimant must show that counsel "could and would have adduced evidence that might have altered the result." *Brock*, 84 F.3d at 728 (*quoting Kane*, 731 F.2d at 1220).

In her reply brief, claimant asserts that she was prejudiced because "counsel would have pointedly addressed the issue that any work performed by Plaintiff was performed under *special circumstances* and therefore did not constitute *substantial gainful work activity*." [rec. doc. 14, p. 2]. However, as indicated below, claimant was able to address this argument in absence of counsel. In any

event, the undersigned does not find that any prejudice occurred, particularly in light of the fact that claimant received several notices indicating that she had the right to counsel and signed a waiver of that right prior to the hearing. Accordingly, this argument lacks merit.

Next, claimant argues that she did not validly waive her right to inspect post-hearing evidence.

When post-hearing evidence is obtained, the Hearings, Appeals, and Litigation Law manual (HALLEX) I-2-7-30 entitled "Proffer Procedures"• provides that an ALJ:

> [M]ust proffer all posthearing evidence unless:
>
> • The evidence was submitted by the claimant or the claimant's representative and there is no other claimant to the hearing.
>
> • *The claimant has knowingly waived his or her right to examine the evidence.*
>
> • The ALJ proposes to issue a fully favorable decision.

(emphasis added); *Peters v. Astrue*, 2014 WL 2618536, at *2 (W.D. La. June 12, 2014) (Kay, J).

HALLEX I-2-7-35B entitled "Entering Posthearing Evidence" states:

> If an ALJ enters posthearing evidence into the record <u>without proffer</u>, the ALJ must ensure that the claimant waived the right to examine the evidence and to appear at a supplemental hearing. The waiver may

> have been made on-the-record at the hearing *or by a <u>signed</u> written statement*. Regardless of the form of the waiver, the ALJ must ensure on-the-record that the claimant (especially a *pro se* claimant) is fully informed of and understands the effects of the waiver. If the waiver was signed by a written statement, the ALJ must enter the statement into the record as an exhibit.

*Peters*, 2014 WL 2618536, at *3.

Here, the record reflects that claimant signed a Waiver Pertaining to Evidence Received Subsequent to the Hearing indicating that she waived her right to inspect, prior to decision, any additional information received by the ALJ in connection with her application for benefits. (Tr. 62). The waiver also indicated that claimant requested that the post-hearing documents be made part of the record and considered by the ALJ in determining his decision in this case. (Tr. 62). Further, the waiver was entered into the record as an exhibit. (Tr. 62).

In support of her argument that her waiver of the right to inspect post-hearing evidence was invalid, claimant cites *Tanner v. Secretary of Health and Human Services*, 932 F.2d 1110, 1113 (5th Cir. 1991). There, claimant's attorney expressly objected to the phrasing of post-hearing interrogatories posed by the ALJ to the vocational expert. The court held that by denying counsel's objection *sub silentio*, the ALJ deprived the attorney of the opportunity to assert claimant's

right of cross-examination.  Here, however, claimant *expressly* waived her right to inspect post-hearing evidence and did not so object.  (emphasis added).  Thus, *Tanner* is inapplicable.

Finally, claimant asserts that the ALJ applied an improper legal standard and relied upon evidence not adduced at the hearing to conclude that she performed substantial gainful work activity.  In response, the government argues that because claimant engaged in substantial gainful activity ("SGA") after the alleged disability onset date, the ALJ properly denied her claim for disability benefits at step one.  The undersigned agrees with the government's position.

The record indicates that claimant received unemployment benefits for almost a year after her company closed the apartment community she was managing.  (Tr. 78).  As the ALJ observed, in order to receive unemployment benefits, the applicant must assert that he is ready, willing, and able to go to work. "Applications for unemployment and disability benefits are inherently inconsistent.  There is 'no reasonable explanation for how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that [he] is ready and willing to work.' " *Redwine v. Astrue*, 2013 WL 3070850, *13  (E.D. La. June 17, 2013)

(*quoting Workman v. Commissioner of Soc. Sec.*, 105 F. Appx. 794, 801-02 (6th Cir. 2004)).

The ALJ observed that "Though the receipt of unemployment benefits does not necessarily preclude a finding of disability, the inconsistent representations in the course of two administrative proceedings for benefits suggests the subjective representations in this case may not be entirely reliable." (Tr. 11). It is well established that the ALJ has the primary responsibility for resolving conflicts in the evidence. *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Carrier v. Sullivan,* 944 F.2d 243, 247 (5th Cir.1991). Thus, the ALJ's finding as to claimant's credibility is entitled to great deference. *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000).

Additionally, the ALJ found at step one of the sequential evaluation process that claimant had engaged in SGA after September 2011, which was after the alleged onset date of disability (November 4, 2010). (Tr. 11).

The record reflects that the apartment complex for which the claimant worked closed in December, 2010. (Tr. 11). Claimant drew unemployment benefits for most of 2011. (Tr. 11, 78). She returned to work in September, 2011, posting earnings of $7,386.14 in 2011. (Tr. 11, 19).

Claimant continued to work on a full-time basis earning substantial gainful wages. In 2012, she grossed more than $2,000 a month. (Tr. 20).

To be found disabled, an individual must be unable to engage in any substantial gainful activity (SGA) by reason of a medically determinable physical or mental impairment(s) which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of at least 12 months. SSR 82-52 ("Duration of the Impairment"). In considering "duration," it is the inability to engage in SGA because of the impairment that must last the required 12-month period. *Id.*; *see also Barnhart v. Walton*, 535 U.S. 212, 217-22, 122 S.Ct. 1264, 152 L.Ed.2d. 300 (2002) (the inability to work, not just the impairment upon which it is based, must last 12 months).

Here, claimant has not met her burden of showing that she was unable to engage in SGA for the required 12-month period. The record reflects that claimant returned to work full-time as of September 30, 2011, which was after her disability onset date. (Tr. 19). This was the same job for Historic Restoration, Inc., where she earned $29,752.88 in 2010. (Tr. 81-82, 93, 96, 100-01).

For the last quarter of 2010, claimant earned $8,526.00, which averages out to $2,842.00 in wages per month for a three-month period. (Tr. 74). This amount far exceeds the $1,000.00 presumptive level of SGA for non-blind individuals in

11

2010. *See Program Operation Manual System* (POMS) DI 10501.015 Table B, available at https://secure.ssa.gov/apps10/poms.nsf/lnx/0410501015; *Smith v. Soc. Sec. Admin.*, 538 F. Appx 484, 487 (5th Cir. 2013).

Claimant returned to work in September, 2011, earning $7,386.14 in 2011. She continues to work full-time as an apartment manager, grossing more than $2,000 in May, 2012. (Tr. 11, 20). This amount exceeds the 2012 "countable earnings" SGA limit of $1010 montly. *See* POMS DI 10501.015 Table B.

While claimant does not dispute that she engaged in SGA after her alleged disability onset date, she argues that the ALJ failed to acknowledge evidence that she performed her work under "special conditions." [rec. doc. 10, p. 10]. These special conditions include: (1) she was not supervised onsite, (2) she lived onsite in a corporate apartment at the complex since she could not travel long distances to work, and (3) she received assistance from other employees because she was "not being very productive." (Tr. 19-20; 150).

Under the regulations, work that is done under "special conditions" may not be found to constitute SGA. 20 C.F.R. § 404.1573(c).

Examples of special conditions include, but are not limited to, the following:

> (1) You required and received special assistance from other employees in performing your work;
>
> (2) You were allowed to work irregular hours or take frequent rest periods;
>
> (3) You were provided with special equipment or were assigned work especially suited to your impairment;
>
> (4) You were able to work only because of specially arranged circumstances, for example, other persons helped you prepare for or get to and from your work;
>
> (5) You were permitted to work at a lower standard of productivity or efficiency than other employees; or
>
> (6) You were given the opportunity to work despite your impairment because of family relationship, past association with your employer, or your employer's concern for your welfare.

However, the fact that a person works in a sheltered environment or at some other subsidized job does not alone establish disability if the claimant receives substantial earnings. 20 C.F.R. §404.1574(b). Thus, even if claimant could establish that she was employed under special conditions, under the regulations she was engaged in substantial, gainful employment precluding disability payments for that period. *Ellis v. Bowen*, 820 F.2d 682, 684 (5th Cir. 1987). Accordingly, this argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

March 26, 2015, Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE